IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRIUNE HEALTH GROUP, INC., *et al.*, | )<br>)<br>) Case No. 1:12-cv-06756 |
| Plaintiffs, | ) |
| v. | ) |
| ERIC D. HARGAN, in his official capacity as Acting Secretary of Health and Human Services,[1] *et al.*, | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION TO DISMISS
FOR LACK OF JURISDICTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), defendants hereby move to dismiss this case for lack of subject matter jurisdiction.

Plaintiffs challenge "the Final Rule . . . promulgated by the federal defendants on February 15, 2012," which, at that time, required the health care coverage that plaintiffs provide to their employees to include coverage for contraceptive services. Am. Compl. ¶ 6, ECF No. 21. Defendants, however, amended that rule in July 2015, after the Supreme Court decided *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2775 (2014), to provide an accommodation process to closely held for-profit entities with religious objections to contraceptive coverage, like plaintiffs. Plaintiffs chose not to amend their complaint to challenge the accommodation process, which is still available to plaintiffs under current law. Under identical circumstances, the Seventh Circuit remanded for the district court to dismiss as moot another entity's challenge to the contraceptive

---

[1] Eric D. Hargan, Acting Secretary of the United States Department of Health and Human Services, "is automatically substituted as a party" for Sylvia M. Burwell. Fed. R. Civ. P. 25(d).

coverage mandate. *See Ozinga v. Price*, 855 F.3d 730, 736 (7th Cir. 2017). *Ozinga* is controlling here and compels dismissal of this case.

In addition, defendants recently issued rules that exempt religious objectors like plaintiffs from any requirement to include contraceptive coverage in their health plans. Because the availability of this exemption means that plaintiffs are now exempted from the contraceptive coverage mandate to the extent of their sincerely held religious beliefs, even without undertaking the accommodation process, the case is doubly moot. The Court therefore should grant defendants' motion to dismiss.

## BACKGROUND

### I. STATUTORY AND REGULATORY BACKGROUND

In March 2010, Congress enacted the Affordable Care Act ("ACA"). *See* Patient Protection and Affordable Care Act ("PPACA"), Pub. L. No. 111–148, 124 Stat. 119 (2010); Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111–152, 124 Stat. 1029. Section 1001 of the PPACA requires group health plans and health insurance issuers that offer group or individual health coverage to provide coverage for certain preventive services without cost-sharing. *See* 42 U.S.C. § 300gg-13. The preventive services that must be covered include, "with respect to women, such additional preventive care and screenings not described in [§ 300gg-13(a)(1)] as provided for in comprehensive guidelines supported by the Health Resources and Services Administration [("HRSA")]. *Id*. at § 300gg-13(a)(4).

The Departments of Health and Human Services, Labor, and the Treasury ("the Agencies") issued interim final regulations ("IFRs") implementing the preventive services coverage provision in 2010. IFRs Relating to Coverage of Preventive Services Under the PPACA, 75 Fed. Reg. 41,726, 41,728 (July 19, 2010). Because no HRSA guidelines relating to preventive care and

screening for women existed when the ACA was passed, the Department of Health and Human Services ("HHS") commissioned the Institute of Medicine ("IOM") to recommend a set of comprehensive guidelines. *See* Inst. of Med., Clinical Preventive Services for Women: Closing the Gaps 2 (2011). On July 19, 2011, IOM published its report, recommending that HRSA's women's guidelines include, among other things, "the full range of [FDA]-approved contraceptive methods, sterilization procedures, and patient education and counseling for women with reproductive capacity." *Id*. at 10–12.

On August 1, 2011, HRSA adopted the IOM recommendations in guidelines published on its website. *See* HRSA, Women's Preventive Services Guidelines ("Guidelines"), http://www.hrsa.gov/womens-guidelines. Simultaneously, the Agencies issued a second set of IFRs specifying that any contraceptive coverage mandate may be subject to an exemption for certain religious employers.[2] *See* Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the PPACA, 76 Fed. Reg. 46,621, 46,625 (Aug. 3, 2011). On February 15, 2012, the Agencies issued final regulations ("the 2012 final rules") that adopted the interim rules' definition of a religious employer. 77 Fed. Reg. 8725, 8726–27 (Feb. 15, 2012).

Around the same time, the Agencies announced the creation of a temporary enforcement safe harbor for non-grandfathered plans sponsored by certain non-profit organizations with religious objections to contraceptive coverage that would not qualify as religious employers (and for any associated group health insurance coverage). *See* HHS, Guidance on the Temporary

---

[2] To qualify for the religious employer exemption, an employer was required to meet four criteria: (1) The inculcation of religious values is the purpose of the organization; (2) The organization primarily employs persons who share the religious tenets of the organization; (3) The organization serves primarily persons who share the religious tenets of the organization; (4) The organization is a nonprofit organization as described in section 6033(a)(1) and section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended. *See* 76 Fed. Reg. at 46,626.

Enforcement Safe Harbor, 1 n.1 & 3–4 (June 28, 2013), https://go.usa.gov/xnZBN.  Under the safe harbor, the Agencies committed not to take any enforcement action against an employer, group health plan, or group health insurance issuer with respect to a non-exempt, non-grandfathered group health plan that failed to cover some or all recommended contraceptive services. *Id*. at 3-4.

The safe harbor did not extend to for-profit companies with religious objections to providing contraceptive services.  Therefore, dozens of organizations and individuals, including plaintiffs here, filed lawsuits challenging the contraceptive coverage mandate as implemented by the 2012 final rules.

The Agencies engaged in another round of rulemaking beginning in March 2012.  *See* Certain Preventive Services Under the ACA, 77 Fed. Reg. 16,501 (Mar. 21, 2012); Coverage of Certain Preventive Services Under the ACA, 78 Fed. Reg. 8456 (Feb. 6, 2013).  This process culminated in final rules published in July 2013.  *See* 78 Fed. Reg. 39,870 (July 2, 2013).  The 2013 final rules sought to simplify the religious employer exemption by eliminating the first three criteria and clarifying the remaining criterion.  *Id*. at 39,896.  They also established an "accommodation" for group health plans established or maintained by "eligible organizations." *Id.* at 39,874–80, 39,896.  Under this accommodation process, an eligible organization was not required "to contract, arrange, pay, or refer for contraceptive coverage" to which it had religious objections, *id*. at 39,874, but was required to complete a self-certification form stating that it was an eligible organization and to provide a copy of that form to its issuer or third-party administrator ("TPA"). *Id.* at 39,878–79.  The organization's health insurance issuer or TPA, after receiving the self-certification, would then be required to provide, or arrange for, separate payments to participants and beneficiaries for contraceptive services without cost sharing, premium, fee, or

other charge to participants or beneficiaries, or to the eligible organization or its plan. *See id.* at 39,875–80.[3]

In 2014, the Supreme Court held that, at least as applied to closely held for-profit corporations with religious objections to providing contraceptive coverage, the contraceptive coverage mandate violated the Religious Freedom Restoration Act ("RFRA"). *Hobby Lobby*, 134 S. Ct. at 2775. The Court explained that the "contraceptive mandate substantially burden[ed] the exercise of religion" by those employers because it put them to the choice of violating their sincerely held religious beliefs or facing significant fines. *Id.* at 2757 (citation omitted). The Court also held that the application of the mandate to them was not the least restrictive means of achieving a compelling governmental interest, because the accommodation made available to certain non-profit organizations was a less restrictive alternative than applying the mandate directly. *See id.* at 2779–80. The Court cautioned that it was not deciding "whether an approach of this type complies with RFRA for purposes of all religious claims." *Id.* at 2782.

The Agencies responded to *Hobby Lobby* by issuing final rules in July 2015 that extended the accommodation to closely held for-profit entities with religious objections to contraceptive coverage. *See* 80 Fed. Reg. at 41,324.

Meanwhile, the litigation about whether the accommodation process satisfied the government's RFRA obligations toward non-profit religious entities generated a split among the

---

[3] The Agencies subsequently augmented this regulatory accommodation process in light of the Supreme Court's order in *Wheaton College* v. *Burwell*, 134 S. Ct. 2806 (2014). *See* Coverage of Certain Preventive Services Under the ACA, 79 Fed. Reg. 51,092 (Aug. 27, 2014); 80 Fed. Reg. 41,318, 41,324 (July 14, 2015). Under the augmented accommodation, an organization could "inform[] the Secretary of Health and Human Services in writing that it is a nonprofit organization that holds itself out as religious and has religious objections to providing coverage for contraceptive services" and was not required to use the self-certification form or send copies of that form to its health insurance issuers or administrators. *Wheaton Coll.*, 134 S. Ct. at 2807.

federal appeals courts, and the Supreme Court granted certiorari in *Zubik v. Burwell*, 136 S. Ct. 1557 (2016), to resolve it. On May 16, 2016, the Supreme Court issued a *per curiam* opinion vacating the judgments of the courts of appeals and remanding the cases "[i]n light of the . . . substantial clarification and refinement in the positions of the parties" in their supplemental briefs. *Id*. at 1560. The Court stated that it anticipated that, on remand, the courts of appeals would "allow the parties sufficient time to resolve any outstanding issues between them." *Id*. The parties were unable to reach such a resolution by January 2017.

On May 4, 2017, the President issued an Executive Order titled "Promoting Free Speech and Religious Liberty." Exec. Order No. 13,798, 82 Fed. Reg. 21,675 (May 4, 2017). Regarding "Conscience Protections with Respect to Preventive-Care Mandate," that order instructed the Agencies to "consider issuing amended regulations, consistent with applicable law, to address conscience-based objections to the preventive-care mandate promulgated under section 300gg-13(a)(4) of title 42, United States Code." *Id*. at 21,675.

"Consistent with the President's Executive Order and the Government's desire to resolve the pending litigation and prevent future litigation from similar plaintiffs," the Agencies concluded that it was "appropriate to reexamine the exemption and accommodation scheme currently in place for the Mandate" and issued IFRs on October 6, 2017. Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the ACA, 82 Fed. Reg. 47,792, 47,799 (Oct. 13, 2017) (the "Religious Exemption Rule"); *accord* Moral Exemptions and Accommodations for Coverage of Certain Preventive Services Under the ACA, 82 Fed. Reg. 47,838 (Oct. 13, 2017) (the "Moral Exemption Rule") (collectively also "the Rules"). The Agencies have requested public comments on the Rules by December 5, 2017.

The Religious Exemption Rule expands the exemption for non-governmental plan sponsors that object to providing all or a subset of contraceptive services based on sincerely held religious beliefs, as well as institutions of higher education in their arrangement of student health plans, to the extent of these entities' sincerely held religious beliefs. 45 C.F.R. § 147.132(a)(2).[4] The Rules also maintain the accommodation process as a voluntary mechanism to provide contraceptive availability for women covered by the plans of exempt entities that choose to use it. 45 C.F.R. § 147.131; 26 C.F.R § 54.9815-2713A; 29 C.F.R. § 2590.715-2713A.

On October 6, 2017, the same date that the Agencies issued the Rules, HRSA updated its Guidelines to exempt entities and individuals that qualify for exemptions from the Guidelines' requirements. *See* Guidelines.[5]

## II. PROCEDURAL HISTORY

Plaintiffs, Triune Health Group, Inc., and its co-owners, Christopher Yep and Marry Anne Yep, filed an Amended Complaint on October 15, 2012. *See* Am. Compl. ¶¶ 2, 4. The Amended Complaint seeks "declaratory and injunctive relief from the operation of the Final Rule confirmed and promulgated by the federal defendants on February 15, 2012, mandating that group health plans include coverage, without cost sharing, for 'all [FDA]-approved contraceptive methods,

---

[4] The Moral Exemption Rule provides an exemption for certain non-governmental plan sponsors that object to providing all or a subset of contraceptive services based on sincerely held moral convictions, as well as institutions of higher education in their arrangement of student health plans, to the extent of these entities' sincerely held moral convictions. 45 C.F.R. § 147.133(a)(2). Each rule also includes an "individual exemption" that allows a willing plan sponsor of a group health plan or a willing health insurance issuer offering group or individual health insurance coverage to provide a separate benefit package option or separate policy, certificate, or contract of insurance to an individual who objects to coverage for contraceptive services based on sincerely held religious beliefs or moral convictions. *Id*. §§ 147.132(b), 147.133(b).

[5] The Rules are currently subject to eight legal challenges, including two in which plaintiffs are seeking preliminary injunctions to prevent the government from enforcing the Rules.

7

sterilization procedures and patient education and counseling[.]'" *Id.* ¶ 6 (citing 77 Fed. Reg. 8725 (Feb. 15, 2012)). Plaintiffs allege that the 2012 final rules violate RFRA, the First Amendment to the U.S. Constitution, the Administrative Procedure Act, and the separation of powers doctrine because they "require them to provide their employees with drugs and services that they cannot continue to provide without offending and violating their sincere religious convictions." *Id.* ¶ 1; *see id.* ¶¶ 72-109.

On January 3, 2013, this Court granted plaintiffs' motion for a preliminary injunction in light of the Seventh Circuit's decision to grant an injunction pending appeal in a similar case, *Korte v. Sebelius*, 528 F. Appx. 583 (7th Cir. 2012). *See* Minute Entry, ECF No. 49. The Court thus preliminarily enjoined defendants from "any application or enforcement of any requirement that Plaintiffs provide contraception, abortion, sterilization, abortifacients, or related education and counseling in its employee health plans contrary to their religious objections." Preliminary Injunction Order at 2, ECF No. 50. Defendants filed a Notice of Appeal on March 4, 2013, *see* ECF No. 53, and the Court subsequently stayed district court proceedings pending the Seventh Circuit's resolution of appeals in similar cases, *see* Minute Entry, ECF No. 64.

In September 2016, after the Supreme Court decided *Hobby Lobby*, plaintiffs were given an opportunity to file a second amended complaint to challenge the accommodation process in the July 2015 final rules. *See* Minute Entry, ECF No. 140. Plaintiffs, however, declined to do so. *See* Minute Entry, ECF No. 141. The Court subsequently ordered defendants to respond to plaintiffs' Amended Complaint by December 1, 2017. *See* Minute Entry, ECF No. 146.

## STANDARD OF REVIEW

Defendants move to dismiss the case for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). The party invoking federal jurisdiction bears the burden of establishing its

existence, and the Court must determine whether it has subject matter jurisdiction before addressing the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 104 (1998).

## ARGUMENT

This case should be dismissed because plaintiffs' claims are moot twice over. The 2012 final rules that plaintiffs challenge were amended in July 2015 to provide an accommodation to for-profit religious objectors like plaintiffs and again in October 2017 to exempt religious objectors like plaintiffs from the contraceptive coverage mandate entirely. The Court lacks jurisdiction to pass judgment on regulations that no longer exist and no longer apply to plaintiffs.

Article III of the Constitution defines the outer bounds of the constitutional jurisdiction of federal courts by restricting the exercise of judicial power only to "Cases" or "Controversies." U.S. Const., art. III, § 2. In part, this constitutional limitation defines "the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government." *Flast v. Cohen*, 392 U.S. 83, 95 (1968); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). Absent an ongoing case or controversy, a case is moot and a court lacks jurisdiction. *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). As the Supreme Court has observed, "[m]ootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Arizonans for Official English*, 520 U.S. at 68 n.22 (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).

Intervening events that occur while litigation is pending may, of course, render a formerly live, ongoing controversy moot. Those events might eliminate any ongoing injury-in-fact, *see, e.g.*, *Spencer v. Kemna*, 523 U.S. 1, 14 (1998), or render relief unavailable because the relief sought

9

has effectively been granted, *see Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992); *Mills v. Green*, 159 U.S. 651, 653, 657-58 (1895). "When a plaintiff's complaint is focused on a particular statute, regulation, or rule and seeks only prospective relief, the case becomes moot when the government repeals, revises, or replaces the challenged law and thereby removes the complained-of defect." *Ozinga*, 855 F.3d at 734 (citing cases); *see also Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (where a defendant has amended its regulations, "the issue of the validity of the old regulation is moot"). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (citation omitted). Thus, even if there is a live controversy when the case is filed, courts should refrain from deciding claims if "the requisite personal interest that must exist at the commencement of the litigation" is no longer present. *Arizonans for Official English*, 520 U.S. at 68 & n.22 (citations omitted).

I. **THE SEVENTH CIRCUIT'S DECISION IN *OZINGA V. PRICE* REQUIRES DISMISSAL OF THIS CASE**

Even before the Agencies issued the Religious Exemption Rule, the Seventh Circuit held that a case identical to this one in all relevant respects was moot in light of the July 2015 final rules extending the accommodation process to closely held for-profit entities. *See Ozinga*, 855 F.3d at 733. Because the accommodation process is still available to plaintiffs, this case is also moot.

Like plaintiffs' Amended Complaint, "Ozinga's suit was focused exclusively on the mandate as it was originally adopted, with no accommodation addressed to closely held for-profit employers . . . that object to the mandate on religious grounds." *Id*. at 734. And, as here, the Ozinga plaintiffs did not "seek to amend their complaint to challenge the particulars of the accommodation . . . , notwithstanding the second wave of litigation by other employers presenting

10

such challenges." *Id*. Under those circumstances, the Seventh Circuit held that the Agencies' "revision of the regulatory framework in July 2015 rendered moot Ozinga's challenge to the contraceptive mandate." *Id*.

The court reasoned that, "[o]nce the government, in response to the *Hobby Lobby* decision, re-wrote the regulations to permit closely held for-profit firms to invoke the accommodation . . . , the mandate no longer posed a prospective harm to the company [in light of its failure to challenge the accommodation], and there was no longer any action for the court to take on Ozinga's behalf." *Id*. at 735. "Any injunction directed to the prior regulations foreclosing the accommodation," the court explained, "necessarily would be meaningless, as those regulations no longer exist." *Id*. (citation omitted). The court also noted that the Ozinga plaintiffs had not suffered any past injury as a result of the mandate because they "had enjoyed the benefit of preliminary injunctive relief during the litigation." *Id*. at 734-35. The court rejected the plaintiffs' argument that the case remained live because the Agencies might reverse course at a future date. Given *Hobby Lobby*'s holding and the presumption of good faith accorded to government officials, the court concluded it was not substantially likely that the Agencies would exclude corporations like Ozinga Brothers from the accommodation in the future. *See id*.

*Ozinga* is binding on this Court, and requires dismissal of this case. Like the plaintiffs in *Ozinga*, plaintiffs here challenge only the 2012 final rules; they declined to amend their complaint to challenge the accommodation process; and they have been protected by a preliminary injunction during the litigation. Accordingly, plaintiffs' claims are moot for the reasons explained by the Seventh Circuit in *Ozinga*.

## II. THE RELIGIOUS EXEMPTION RULE LIKEWISE RENDERS PLAINTIFFS' CLAIMS MOOT

Even if extension of the accommodation to closely held for-profits in July 2015 had not rendered plaintiffs' claims moot, the Agencies' recent issuance of the Religious Exemption Rule has. The Religious Exemption Rule expands the exemption for non-governmental plan sponsors that object to providing all or a subset of contraceptive services based on sincerely held religious beliefs. Thus, plaintiffs are now exempt from the contraceptive coverage mandate to the extent of their sincerely held religious beliefs.

"Only when there is a substantial likelihood that the offending policy will be reinstated if the suit is terminated will a court recognize that the controversy remains live." *Ozinga*, 855 F.3d at 734. Here, given the Agencies' view that the Religious Exemption Rule is necessary to comply with RFRA, it is unlikely that the Agencies' actions constituting the alleged violation— enforcement of the mandate against plaintiffs without providing access to the accommodation— will recur. Additionally, where the defendant is a government agency, there is less concern about the recurrence of objectionable behavior. *See Ozinga*, 855 F.3d at 734 (courts "presume that government officials have acted in good faith in repealing [a] challenged law or policy" (citation omitted)). And that is particularly true where, as here, the federal agency has affirmatively reversed the position that justified the challenged course of conduct.

For similar reasons, plaintiffs lack standing for prospective relief. Any notion that plaintiffs may, in theory, face enforcement of the contraceptive coverage mandate against them in the future can only be speculative and therefore would fall well short of the requirements for Article III jurisdiction. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1143 (2013) (requiring alleged injury to be "certainly impending" to establish standing); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (to satisfy requirement imposed by Article III, "the injury or threat of injury

must be both real and immediate, not conjectural or hypothetical" (citations omitted)); *see also* *Ozinga*, 855 F.3d at 734-35.

## **CONCLUSION**

For all of the foregoing reasons, the Court should dismiss this case as moot.

Respectfully submitted this 1st day of December, 2017,

                                  ETHAN P. DAVIS
                                Deputy Assistant Attorney General

                                JOEL McELVAIN
                                Assistant Director, Federal Programs Branch

                                /s/ Michelle R. Bennett
                                MICHELLE R. BENNETT (CO Bar No. 37050)
                                Senior Trial Counsel
                                United States Department of Justice
                                Civil Division, Federal Programs Branch
                                20 Massachusetts Avenue N.W., Room 7310
                                Washington, D.C.  20530
                                Tel: (202) 305-8902
                                Fax: (202) 616-8470
                                Email: michelle.bennett@usdoj.gov

                                Attorneys for Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notice of such filing to all parties.

        /s/ Michelle R. Bennett
        MICHELLE R. BENNETT